```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       PARKERSBURG
```

**SHERYL JO WILSON,**

    **Plaintiff,**

**v.**                                   **CASE NO. 6:08-cv-00848**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Sheryl Jo Wilson (hereinafter referred to as "Claimant"), protectively filed an application for DIB on October 6, 2006, alleging disability as of June 3, 1993, due to osteoarthritis, fibromyalgia and asthma and residuals from a motorcycle accident. (Tr. at 56-58, 84.) The claim was denied initially and upon reconsideration. (Tr. at 31-35, 37-39.) On October 17, 2005, Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. at 40.)  The hearing was held on September 28, 2006, before the Honorable Toby Buel, Sr. (Tr. at 342-86.)  By decision dated October 27, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-22.)  The ALJ's decision became the final decision of the Commissioner on April 25, 2008, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-8.)  On June 17, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2006).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity from her alleged onset date on June 3, 1993, through her date last insured on March 31, 1998. (Tr. at

16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the cervical and lumbar spine and osteoarthritis. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by an ability to only occasionally climb, balance, stoop, kneel, crouch and crawl. (Tr. at 18.) As a result, Claimant can return to her past relevant work as a retail clerk. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was forty-six years old at the time her insured status expired in 1998. (Tr. at 351) Claimant earned her GED. (Tr. at 355.) In the past, she worked as a babysitter and in retail sales. (Tr. at 364.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, but will only summarize the medical evidence developed during the relevant time period from June 3, 1993, through the expiration of Claimant's insured status on March 31, 1998.

The record includes treatment notes from W.B. Bice, Jr., M.D. dated June 16, 1994, July 14, 1994, July 26, 1994, August 16, 1994, August 24, 1994, and November 30, 1994. Claimant's weigh ranged from 240 to 250 pounds. (Tr. at 121-22.) On June 16, 1994, treatment notes indicate that Claimant hit a tractor trailer while riding a motorcycle on June 3, 1994. Claimant had a hairline

5

fracture of her right clavicle, puncture wounds to the chest, a mild concussion, cervical strain and bruises.  On June 16, 1994, Claimant's range of motion in the right arm was good and her chest puncture wounds had healed.  (Tr. at 123.)  The remaining treatment notes indicate treatment for minor problems, except on July 14, 1994, Claimant had soreness and painful range of motion in her neck and left side.  A CT scan of the head was normal.  (Tr. at 121-22.)

On March 22, 1995, Claimant reported to the emergency room with complaints of pain in the thoracic spine when her husband hugs her and numbness below the knees and in her hands distal to her wrist.  Claimant reported these symptoms began after a motorcycle accident one year earlier.  Claimant weighed 230 pounds.  Alexis Bayo, M.D. diagnosed degenerative joint disease with dysesthesia of the upper and lower extremities of undetermined cause but believed to be some form of radiculopathy.  Claimant was prescribed a medrol dose pack and referred for a consultative examination.  (Tr. at 265-66.)  X-rays of the cervical spine on March 22, 1995, showed straightening of the cervical spine with progression of the anterior spurring as compared to the 1993 study, but no fracture detected.  X-rays of the thoracic spine showed minor scoliosis and spurring, but no fracture.  X-rays of the lumbar spine showed no fracture, but transitional vertebra of the lumbosacral junction associated with left sided sacral pseudoarthrosis and sclerosis, a potential cause of chronic low back pain.  (Tr. at 268.)

On April 19, 1995, Michael A. Morehead, M.D. examined Claimant. Claimant reported neck pain, dizziness, memory loss, blurred vision, headaches and tingling and numbness in her hands and feet. (Tr. at 311.) Examination showed normal cranial nerves and fundi. Sensation on the face was normal to pinprick and light touch. There was no paraspinal muscle spasm in the cervical region. At the most, there was minimal limitation of motion of the neck. Claimant had excellent strength in all four extremities proximal and distal. Deep tendon reflexes trace to 1+ and symmetrical at all levels. Plantars were downgoing. Pin, touch, vibration and position were all normal. Gait was normal. Romberg was negative. Dr. Morehead opined that Claimant had multiple post traumatic and post head injury syndrome, but there was no evidence of physical damage to the brain, spinal cord or other nervous systems structures. (Tr. at 312.)

On March 18, 1996, Claimant reported to the emergency room with complaints of a sore throat, fever, frequency and dysuria and was diagnosed with a viral syndrome and a urinary tract infection. (Tr. at 238-39.)

On January 27, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that as of the expiration of Claimant's insured status in 1998, Claimant had no limitations. (Tr. at 175-82.)

On August 24, 2005, a State agency medical source completed a

Physical Residual Functional Capacity Assessment and opined that as of the expiration of Claimant's insured status in 1998, Claimant had no limitations.  (Tr. at 293-300.)

At the administrative hearing, John Linton, M.D. testified about Claimant's mental condition during the relevant time period. He testified that there was no real record of a mental impairment during this time period.  Dr. Linton observed that "[t]here's been no mental health treatment and so therefore I'm afraid I don't have a whole lot to go on."  (Tr. at 365.)

Robert Marshall, M.D. also testified at the administrative hearing at Claimant's physical impairments.  He too noted the lack of medical records from the relevant time period.  (Tr. at 368.) Dr. Marshall opined that Claimant was limited to a "very restricted range of light work" during the relevant time period.  (Tr. at 374.)  Dr. Marshall further testified that Claimant's posturals would be limited to occasional.  (Tr. at 375.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in assessing Claimant's subjective complaints of pain and her credibility; (2) the ALJ erred in rejecting the opinions of the medical experts who testified at the administrative hearing; and (3) the ALJ improperly discounted testimony and evidence from Claimant's treating physicians.  (Pl.'s Br. at 2-10.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant could perform a reduced range of light work on or before March 31, 1998; (2) the ALJ's residual functional capacity assessment was supported by the opinion of the medical expert, Dr. Marshall; and (3) substantial evidence supports the ALJ's credibility determination. (Def.'s Br. at 7-16.)

Claimant first argues that the ALJ erred in failing to follow the recommendations of Drs. Marshall and Linton as to onset of disability and other opinions. (Pl.'s Br. at 3-4.)

The court proposes that the presiding District Judge find that the ALJ's determination that Claimant could return to her past relevant work as a retail clerk is in keeping with Social Security Ruling ("SSR") 82-62, 1982 WL 31386, *3 (1982) and is supported by substantial evidence.

In his decision, the ALJ found that Claimant could perform light work, limited by an occasional ability to climb, balance, stoop, kneel, crouch and crawl. (Tr. at 18.) The ALJ explained in his decision that he relied on the opinion of Dr. Marshall that Claimant could perform light work because his opinion was "well supported by the objective findings of record, including x-rays [sic] reports during the relevant time period." (Tr. at 21.) The ALJ further determined that Claimant's past relevant work as a retail clerk, performed at the light exertional level, did not require the performance of work-related activities precluded by

9

Claimant's residual functional capacity. (Tr. at 21.)

Contrary to Claimant's assertions, the ALJ did not ignore the recommendations or opinions of Dr. Marshall or Dr. Linton or make findings contrary to these opinions. Dr. Marshall testified that Claimant could perform light work with occasional postural limitations, and the ALJ adopted this opinion in his decision. Claimant's reference to Dr. Marshall's testimony that Claimant is "disabled" (Tr. at 368; Pl.'s Br. at 5), relates to her condition in 2006, not during the period from 1993 to 1998.

Regarding her alleged mental impairments, Dr. Linton testified that the evidence of record did not indicate that Claimant suffered from mental limitations during the relevant time period. Consistent therewith, the ALJ found that Claimant did not have a severe mental impairment during the relevant time period and specifically indicated that he relied upon Dr. Linton's opinion in making such a finding. (Tr. at 21.)

Next, Claimant argues that the ALJ erred in assessing Claimant's pain and subjective symptoms. Claimant contends that the ALJ erred in his findings related to Claimant's activities of daily living. (Pl.'s Br. at 5-9.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 404.1529(b)

10

(2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ determined that Claimant had established medically determinable impairments that could be expected to produce the alleged symptoms. (Tr. at 19.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 18-20.)

The ALJ concluded that Claimant's subjective complaints were not entirely credible. The ALJ relied on the objective medical evidence of record, particularly that from Dr. Bice and Dr. Morehead, both of whom examined or treated Claimant during the relevant time period. In addition, the ALJ found that Claimant's allegations of minimal activities of daily living are not supported by the evidence of record. (Tr. at 20.) The ALJ's findings related to Claimant's subjective complaints of pain are reasonable and supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Claimant next asserts that her obesity poses additional limitations when considered in combination with her additional impairments and that the ALJ should have found Claimant's impairments disabling when considered in combination. (Pl.'s Br. at 7.)

The court proposes that the presiding District Judge find that

11

the ALJ did not err in assessing Claimant's combined impairments, including obesity.

The social security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523 (2006).  Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.  Id.  The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed.  DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

The court proposes that the presiding District Judge find that the ALJ properly consider Claimant's impairments, both alone and in combination in keeping with the above regulation and caselaw.  The ALJ considered Claimant's impairments in combination in making a severity finding, in analyzing Claimant's pain and credibility and

12

in reaching his residual functional capacity finding.

Regarding Claimant's obesity, the ALJ acknowledged Dr. Marshall's testimony that Claimant currently has severe osteoarthritis and that being overweight adds to her problem. (Tr. at 17.) However, there is no evidence of record from the relevant time period suggesting that Claimant's obesity significantly contributed to her limitations during that time period. The medical records provide no such evidence. In any event, Dr. Marshall limited Claimant to light work, unlike two other nonexamining State agency sources who opined that Claimant had no limitations. Dr. Marshall was aware of Claimant's weight and, presumably, his opinion that Claimant was limited to light work with additional limitations reflects any limitations resulting from Claimant's obesity. Thus, the court proposes that the presiding District Judge find that the ALJ did not err in his treatment of Claimant's obesity.

Finally, Claimant argues that the ALJ erroneously discounted testimony and evidence from Claimant's treating physicians and medical advisors. (Pl.'s Br. at 9.) Claimant does not identify the treating physicians to which she refers. As noted above, the ALJ relied on the opinions of Dr. Bice and Dr. Morehead in finding that Claimant's subjective symptoms were not entirely credible. In addition, the court has recommended above that the ALJ's findings regarding the weight afforded the opinions of Drs. Linton and

Marshall are supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing

parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

<table>
<tr><td>  May 7, 2009  <br>Date</td><td>*Mary E. Stanley*<br>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>

15